UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL BENSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-23 |
| | § | |
| CITY OF TEXAS CITY, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is the second lawsuit that Michael Benson has filed in this Court challenging the lawfulness of his termination. This Court granted summary judgment on the first one in favor of Defendant City of Texas City. Benson then filed this case which names the City as a defendant, but adds as individual defendants the City's mayor, Matthew Doyle, and Benson's supervisors, Thomas Kessler and Todd Hoover. All of these Defendants now argue that the ruling in the first case warrants dismissal of Benson's current suit under the doctrine of *res judicata*.

**I.   BACKGROUND**

Plaintiff Michael Benson was employed as a laborer in the Utilities and Water Department for Texas City from 1995 until his termination in 2009. The employment dispute at issue arose after Benson was charged with improper and unauthorized use of a "port-o-potty," rented by Texas City for use at a local park.

In September 2009, the port-o-potty was found at a privately-owned vacant lot leased to Benson for family gatherings and cookouts.

After a police investigation, Benson was charged with misdemeanor theft and nuisance, both of which were later dismissed—the theft charge for lack of jurisdiction and the nuisance charge for lack of proper notice. However, both Benson's immediate supervisor, Todd Hoover, and Hoover's supervisor, Thomas Kessler, recommended Benson be terminated for violating City Personnel Policy section 4.06, which provides that improper or unauthorized use of City property may result in disciplinary action as the City deems appropriate. Mayor Matthew Doyle made the ultimate decision to terminate, citing the supervisors' recommendations, the findings of the police investigation, and Benson's disciplinary record as evidence.

In 2010, Benson filed his first lawsuit, alleging disparate treatment based on racial discrimination in violation of 42 U.S.C. sections 1981 and 1983. The Court granted Texas City's summary judgment motion, finding that Benson failed to show that there was evidence from which a jury could infer that Texas City fired him because of his race. *Benson v. City of Texas City*, 2013 WL 672579, at *4 (S.D. Tex. Feb. 25, 2013) (*Benson I*). After Texas City filed its summary judgment motion in *Benson I*, Benson sought to amend his complaint to add the individual defendants, but the Court denied the request. Given the Court's refusal

to allow new parties to be sued at such a late juncture in the case, Benson filed this second lawsuit (*Benson II*) before the Court ruled on the *Benson I* summary judgment motion.  In this suit, Benson alleges the following claims against Texas City and the individual defendants: (1) retaliatory discharge in response to his complaints regarding salary and position, including a failure to compensate him for work he performed as a truck driver and as a wastewater certifier; and (2) disparate treatment based on race.

The Defendants now argue that Benson's claims are barred by the *res judicata* doctrine.

## II. STANDARD OF REVIEW

When a party moves for summary judgment,[1] the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

---

[1] Texas City and the individual defendants moved for a Rule 12(c) judgment on the pleadings, or alternatively, for summary judgment. Because discovery is complete and there is an evidentiary record, the Court treats their motion as one for summary judgment.

## III.  RES JUDICATA

*Res judicata* prevents plaintiffs from relitigating claims that were or could have been litigated in a prior lawsuit.[2]  *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994).  By insuring the finality of judgments, *res judicata* "conserves judicial resources and protects litigants from multiple lawsuits." *Id*.  To establish the preclusive effect of a prior federal court judgment, the party invoking the doctrine must establish that: (1) the parties to both actions are identical or at least in privity; (2) the judgment in the first action was rendered by a court of competent jurisdiction; (3) the first action concluded with a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits.  *Id*.; *see also Ellis v. Amex Life Inc. Co.*, 211 F.3d 935, 938 (5th Cir. 2000) (reciting these elements). While others might dispute the "competent" part, these parties agree that this Court is one of competent jurisdiction.  They also acknowledge that the Court's ruling in *Benson I* was a final judgment on the merits. Only the remaining elements are in dispute.

### A. Does this case involve the same transaction as *Benson I*?

The Fifth Circuit has adopted the Second Restatement's transactional test, under which a prior judgment's preclusive effect extends to all rights of the

---

[2] *Res judicata* is sometimes used as the umbrella term for both claim and issue preclusion, though the latter type of preclusion is traditionally called collateral estoppel. *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287 (5th Cir. 1989).  In any event, the Defendants' motion makes clear that they are just asserting a claim preclusion defense.

original plaintiff "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004) (quoting Restatement (Second) of Judgments § 24(1) (1982)). In other words, *res judicata* "bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (internal citation quotation marks, and alteration omitted). "The critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*." *Petro-Hunt*, 365 F.3d at 395–96 (emphasis in original).

Though Benson asserts a new retaliation claim in this case, the retaliation claim is based on the same adverse action—the termination—that gave rise to *Benson I*. *See Fleming v. Travenol Labs., Inc.*, 707 F.2d 829, 834 (5th Cir. 1983) (barring plaintiff's Title VII sex discrimination claim on *res judicata* grounds because she previously asserted, and lost, a section 1983 race discrimination claim based on the same set of facts); *see also Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 560 (5th Cir. 1983) (en banc) (holding that plaintiff who can assert multiple potential remedies for a given wrong may not assert them serially, but must instead advance them all at the same time). Undoubtedly, Benson could have also alleged a retaliation claim in his first lawsuit. Accordingly, the same

transaction requirement is met.

### B. Are Texas City and the individual defendants in privity?

The final factor is obviously satisfied for Benson's claim against Texas City. It is the same party that obtained the summary judgment ruling in its favor in *Benson I*. Texas City is thus entitled to summary judgment in this case on *res judicata* grounds.

The tougher question is whether the City's employees, who have been sued in their individual capacities, can rely on the preclusive effect of the prior judgment obtained by Texas City, the only defendant in *Benson I*. Although *res judicata* does not require strict identity of the parties, it does require that the party invoking it be in privity with the defendant in the prior action. *Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x 359, 364 (5th Cir. 2011) (citing *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Operations.*, 24 F.3d 743, 746 (5th Cir. 1994)). The Fifth Circuit has recognized three circumstances in which privity exists: "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Id.* (citing *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990)).

The Defendants argue that the necessary connection exists, citing cases finding that employees and their employer were in privity for claim preclusion purposes. *See Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989); *see also Wang*, 439 F. App'x. at 364 (finding that entity adequately represented the interests of its subsidiaries in a prior lawsuit). That made sense in the context of those cases because the employer was vicariously liable for torts committed by its employees. *Id.* ("In *Lubrizol v. Exxon Corp.*, the Fifth Circuit found that where the initial suit was filed against the corporation on grounds of vicarious liability, the employees were in privity with the employer for purposes of *res judicata*"). In *Lubrizol*, the Fifth Circuit held that the dismissal of an earlier case against Exxon precluded a subsequent case against Exxon's employees because "Exxon breached a previous New Jersey protective order, provoking the computer dispute, only because . . . Exxon employees acting in the scope of their duties[] engaged in the exact conduct of which [Plaintiff] now complains." 871 F.2d at 1288. When vicarious liability exists, the employees and their employer have essentially the same defenses available to them. *See*, *e.g.*, *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex. 1999) (holding that an employer may be liable for intentional torts committed by an employee within the scope of his or her employment where the tortious act, although not specifically authorized by the employer, is closely connected with the employee's authorized duties).

But as defendants in section 1983 cases frequently point out, vicarious liability (or *respondeat superior*) does not exist for constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Even if government employees engage in unconstitutional conduct, their municipal employer is not liable unless those violations resulted from the city's policy or practice. *Id*. at 658 (holding that "local governments could not be held liable under a theory of *respondeat superior* but rather could be held liable only when the constitutional deprivation arises from a governmental custom"). And the individual defendant enjoys a qualified immunity defense that a municipality cannot invoke. *See*, *e.g.*, *Wood v. Strickland,* 420 U.S. 308 (1975). Thus a dismissal in favor of a municipality does not necessarily preclude liability on the part of the public official, and vice versa.

Because "different legal theories may be necessary to prove liability in a personal-capacity, as opposed to an official-capacity, case [and] different defenses are available to a defendant who is sued in his personal capacity[,] courts do not generally consider an official sued in his personal capacity as being in privity with the government." *Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir.), *cert. denied,* 488 U.S. 856 (1988). Thus, "the relationships between a government and its officials justify preclusion only as to litigation undertaken in an official capacity." *Id*. (quoting C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §

4458, at 508 (1981)); *see also Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir. 1987) (holding that "a judgment against a government does not bind its officials sued in their personal capacities"); Restatement (Second) of Judgments § 36(2) (1982) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of *res judicata* in a subsequent action in which he appears in another capacity.").

The Fifth Circuit follows this general view. In *Warnock v. Pecos Cnty.*, 116 F.3d 776 (5th Cir. 1997), the plaintiff brought section 1983 claims against state district judges in their individual capacities, alleging that they refused to reappoint her in retaliation for whistleblowing. An earlier state court suit against the County had been unsuccessful. The Fifth Circuit rejected the argument that the individual defendants were in privity with the County, explaining that "*[r]es judicata* does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity." *Id.* at 778 (quoting *Howell Hydrocarbons, Inc. v. Ada*ms, 897 F.2d 183, 188 (5th Cir. 1990)).

The posture of this case is the same. The public entity was dismissed from the first suit, and now the employees are being sued. Of course, in this case we know that the earlier dismissal was not based on the "policy or practice" requirement or another issue unique to the municipality, but instead on a finding that Benson could not make out an underlying case of racial discrimination. The

application of *res judicata* does not turn, however, on the nature of the issues involved in the dismissal—that is the domain of collateral estoppel. All that matters is that there is a valid final judgment on the merits. *See, e.g., Swift v. McPherson*, 232 U.S. 51, 55–56 (1914) ("Ordinarily, such a question is answered by a mere inspection of the decree,—the presumption being that a dismissal in equity, without qualifying words, is a final decision on the merits. That presumption of finality disappears whenever the record shows that the court did not pass upon the merits but dismissed the bill because of a want of jurisdiction, for want of parties, because the suit was brought prematurely, because the plaintiff had a right to file a subsequent bill on the same subject-matter, or on any other ground not going to the merits."). Indeed, it is often the case that there is no judicial explanation for the prior dismissal because it came about through settlement. *See*, *e.g.*, *Matter of West Texas Marketing Corp.*, 12 F.3d 497, 501–02 (5th Cir. 1994) (recognizing that a settlement agreement between taxpayers and Internal Revenue Service embodied in a judgment is entitled to *res judicata* effect). The defendants argue that the Court should look "pragmatically" at the privity issue by deciding whether the parties are "sufficiently close." Docket Entry No. 19 at 1. But *Warnock* makes clear that defendants sued in their individual capacities are not "sufficiently close" to their public employers for the logical reason that they both have different defenses.

The individual defendants rely heavily on *Nilsen v. City of Moss Point*, 701 F.2d 556 (5th Cir. 1983) (en banc), in support of their argument that *Benson I* should have preclusive effect on the claims brought against them in this case. *Nilsen*, however, focused on whether the "same transaction" requirement for *res judicata* was satisfied when a plaintiff had lost a Title VII sex discrimination suit and in a later suit brought a constitutional sex discrimination claim under section 1983. *See id.* at 559–61. *Nilsen*'s holding—that the section 1983 sex discrimination claim could have been brought in the earlier Title VII case and was thus barred by the prior dismissal—supports this Court's conclusion that the employment-related claims Benson brings in this case could have been brought in *Benson I*. *See supra* at 4–6. But *Nilsen* did not address the separate issue whether public entities are in privity with their employees when the latter are sued in their individual capacities. In *Nilsen*, the municipal defendant that sought dismissal on *res judicata* grounds in what was termed "Nilsen IV" had been one of the defendants who obtained summary judgment in "Nilsen II/III." *See id.* at 558 n.1 (noting that City of Moss Point was the only defendant in Nilsen IV)[3]; *Nilsen v. City of Moss Point,* 621 F.2d 117 (5th Cir.) (affirming summary judgment in Nilsen II/III). Because *Nilsen* did not involve the issue of privity between a public

---

[3] Only individual defendants were sued in Nilsen I, but that case was "dismissed without prejudice" and thus it was not that case, but instead the grant of summary judgment in favor of the city and others in Nilsen II/III, that was the basis for the *res judicata* ruling in Nilsen IV. *See Nilsen*, 701 F.2d at 558 n.1.

agency and its employees that the Fifth Circuit later decided in *Warnock*, it does not support the Defendants' argument that *res judicata* or the principle against "claim splitting" warrant dismissal of the claims brought against the individual defendants.

Because the Defendants have failed to establish privity between Texas City and the City's officials (Doyle, Kessler, and Hoover), that element of their *res judicata* defense fails, and summary judgment in their favor is improper.

### IV. CONCLUSION

For the reasons explained above, Defendants' Motion for Summary Judgment (Docket Entry No. 14) is **DENIED IN PART** and **GRANTED IN PART**. The Court **DENIES** the motion with respect to the claims against Defendants Doyle, Kessler, and Hoover; and **GRANTS** the motion with respect to the claims against the City of Texas City. A subsequent order will set a status conference in this matter.

**IT IS SO ORDERED.**

**SIGNED** this 11th day of March, 2014.

_____
Gregg Costa
United States District Judge